**JACOBS P.C.**
*Proposed Attorneys for the Debtor,*
*Yeshiva Gedola Lubavitch Inc.*
595 Madison Avenue, 39th Floor
New York, NY 10022

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

| | |
|---|---|
| In re | Case No. 23-42923-jmm |
| **YESHIVA GEDOLA LUBAVITCH INC.,** | Chapter 11 |
| Debtor. | |

------------------------------------------------------------X

### DEBTOR'S EMERGENCY MOTION FOR ORDERS ENFORCING THE AUTOMATIC STAY, CONTEMPT, AND SANCTIONS WITH POINTS AND AUTHORITIES

TO: JIL MAZER-MARINO
UNITED STATES BANKRUPTCY JUDGE

The Debtor and Debtor in Possession, Yeshiva Gedola Lubavitch, Inc., ("YGL" or the "Debtor") represents:

### PRELIMINARY STATEMENT

1. YGL asks this Court to enter the prefixed Order to Show Cause, and to enter further orders substantially in the form attached hereto as Exhibit "A:" pursuant to 11 U.S.C. § 105 and the Court's inherent powers:

    (i) adjudging respondent Landlord (defined below) to be in ongoing contempt for willful violation of the automatic stay afforded the Debtor

1

in this case, by 11 U.S.C. § 362(a) (the "Automatic Stay"); (ii) directing the Landlord to remove any impediments to the Debtor accessing and using the Property (defined below); (iii) directing the Landlord to cease interfering with the Debtor's operations and business; (iv) ordering Landlord pay (a) YGL's attorneys' fees related to this Motion, efforts to remove the access and use impediments to the Property and enforcing the Automatic Stay and (b) $20,000 for cash and computer equipment currently missing from the property; (v) ordering Landlord to pay a fine of five thousand dollars ($5,000.00) for each day it fails to comply with the Automatic Stay; and (vi) granting such other, further, and different relief the Court deems proper (the "Motion").

2. The Motion should be granted because:

    a.) YGL filed this case to: i.) prevent its eviction from 92-15 69th Avenue, Forest Hills, NY 11375 (the "Property"); ii.) prevent the Landlord from interfering with YGL's operations and business; iii.) preserve YGL's business and functions;

    b.) Sharei Torah, a 501(c)(3) organization ("Landlord" or "ST"), was provided notice of this case when it was filed and of the Automatic Stay imposed by 11 U.S.C. § 362(a);

    c.) ST was advised that it was violating the Automatic Stay and that

YGL would make this Motion if ST's violations of the Automatic Stay did not stop;

d.) YGL sought this Court's intervention when ST would not remove access impediments at the Property, such as changed locks, blockaded windows, and agents of the Landlord preventing free use of the Property;

e.) Some of these access impediments were implemented before the City Marshal's Eviction Date (defined below), short-circuiting the eviction process and violating YGL's rights;

f.) ST should be compelled to comply with the automatic stay; and

g.) ST should compensate YGL for ST's contempt, violation of the Automatic Stay, lost property, and forcing YGL to make this Motion.

3. These matters are elucidated herein and in the accompanying declaration of Rabbi Menachem Baruch.

**JURISDICTION AND VENUE**

4. YGL filed this case under Chapter 11 of the Bankruptcy Code on August 16, 2023.

5. YGL is a 501(c)(3) organization that operates a yeshiva, Yeshiva

Gedola Lubavitch (the "Yeshiva") which educates and trains rabbinical students and has approximately 80 rabbinical students.

6. YGL continues to operate its business and control its assets as a debtor in possession, pursuant to 11 U.S.C. §§ 1107 and 1108.

7. This Court has jurisdiction over this case and Motion, pursuant to 28 U.S.C. §§ 1334(a) and (b), and 157.

8. This Motion is a core proceeding, as that term is defined by 11 U.S.C. § 157.

9. No trustee was appointed in this case.

10. No creditors' committee exists in this case.

11. This District is the appropriate district for this Motion, pursuant to 28 U.S.C. §§1408 and 1409.

## BACKGROUND

12. On August 16 (the "Petition Date"), the Debtor filed on an emergency basis.

13. This case was precipitated by ST obtaining warrants of eviction for the Property in *Sharei Torah v. Mendel Hendel, Menachem Mendel Shagalov, Congregation Ohr Menachem aka Yeshiva Gedola Lubavitch, "John" "Doe," and "Jane" "Doe"* (collectively, the

"Tenants") (Index Number: LT-077973-18/QU), boarding up windows, changing the locks at, and sending agents to impede entry to the Property and interfering with YGL's use of the Property before the eviction occurred. *See* Exhibit B.

14. The City Marshal issued a 14-day notice of eviction earlier this month to YGL and posted a sign on the Property that the eviction would take place on August 18, 2023 (the "Eviction Date").

15. ST's imposing access impediments and the prospect of eviction posed an immediate and substantial threat to YGL and the Yeshiva, which is scheduled to resume classes on August 21, 2023.

16. On the Petition Date, YGL notified ST of this case and that the continued presence of access impediments at the Property was a violation of the automatic stay imposed by 11 U.S.C. § 362(a). A copy of the notice YGL provided to ST is annexed hereto and incorporated herein as Exhibit "C."

17. YGL's counsel asked the Landlord's counsel to restore YGL's access to the Property and wrote a letter to this Court to effectuate the same.

18. On August 17, 2023, a representative of the Landlord showed up at the Property and impeded access thereto.

19. YGL advised ST that it would make this Motion if ST did not stop

interfering with TGL's access and use of the Property and YGL's operations. A copy of that communication is annexed hereto and incorporated herein as Exhibit "D."

20. Despite these efforts and the clear prohibitions of 11 U.S.C. § 362(a), the Landlord continues to impede the Debtor's access to the Property and has done so ahead of the Eviction Date.

## ST VIOLATAED YGL'S AUTOMATIC STAY
## 11 U.S.C. § 362(a)

21. Bankruptcy Code section 362(a) provides, among other things:

   Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of–

   (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; . . .

   (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; . . .

   (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

   11 U.S.C. 362(a).

22. "The scope of the stay is broad, encompassing almost any type of

formal or informal action taken against the debtor or the property of the bankruptcy estate. *In re TS Empl., Inc.*, 597 BR 494, 533 (Bankr. S.D.N.Y. 2019), citing, *In re Salov*, 510 B.R. 720, 726 (Bankr. S.D.N.Y. 2014).

23. Mere possessory interests in property are protected by the Automatic Stay. *In re Salov,* 510 B.R. at 729 ("It is well settled that a debtor's mere possessory interest in premises, even absent any legal interest, is protected by the automatic stay."); *In re Dominguez*, 312 B.R. 499, 506 (Bankr. S.D.N.Y. 2004); *In re 48th Street Steakhouse*, 835 F.2d 427, 430 (2d Cir.1987) ("A mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay."); *see also In re Fogarty*, 39 F.4th 62, 71 (2d. Cir. 2022) (automatic stay violated by the foreclosure sale of a property when the debtor is a named party In the foreclosure proceedings, even if the debtor holds only a possessory interest in the property).

24. Pertinent to this case, is *In re Salov*, 510 B.R. 720, 729 (Bankr. S.D.N.Y. 2014).

25. There, Fannie Mae purchased in foreclosure the house where a debtor resided and had only a possessory interest. Later, Fannie Mae violated

7

the Automatic Stay by attempting to evict that debtor by prosecuting a post-petition writ of assistance against her, with notice of debtor's bankruptcy filing and without obtaining stay relief. *Id.*

26. ST is engaged in essentially the same and more egregious conduct

27. "Upon receiving actual notice of the commencement of a bankruptcy case, a creditor has an affirmative duty under § 362 to take the necessary steps to discontinue its collection activities against the debtor." *In re Sucre*, 226 B.R. 340, 347 (Bankr. S.D.N.Y. 1998); *see also In re Leiba*, 529 B.R. 501,505 (Bankr. E.D.N.Y. 2015), *In re Crawford*, 388 B.R.506, 526–527 (Bankr. S.D.N.Y. 2008).

28. ST received notice of YGL's bankruptcy case. It failed to cease and continues its Automatic Stay violations.

## AN ORDER SHOULD BE ENTERED, PURSUANT TO 11 U.S.C. § 105(a) COMPELLING ST TO COMPLY WITH THE AUTOMATIC STAY

### 11 U.S.C. § 105(a)

29. Bankruptcy Code § 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

11 U.S.C. § 105(a).

30. Section 105(a) provides broad equitable power for a Bankruptcy Court

to maintain its own jurisdiction and to facilitate the reorganization process. A bankruptcy court may enjoin proceedings in other courts when it is satisfied that such a proceeding would defeat or impair its jurisdiction with respect to a case before it. As courts in the Second Circuit have observed, section 105(a) powers may be exercised "where there is a basis for concluding that rehabilitation, the very purpose for the bankruptcy proceedings, might be undone by the other action." *In re Adelphia Communications Corp.*, 345 BR 69, 85 (Bankr S.D.N.Y. 2006). The *Adelphia* Court has also observed that:

> [T]he Bankruptcy Court has authority under section 105 broader than the automatic stay provisions of section 362 and may use its equitable powers to assure the orderly conduct of the reorganization proceedings.

*Id.*

31. Bankruptcy Code § 105(a) has been employed to stem Automatic Stay violations and compel compliance. *Id.*

32. ST's Automatic Stay violation is incorrigible and warrants this Court applying 11 U.S.C. § 105(a)

## **A FINDING OF CONTEMPT IS WARRANTED, AS IS THE AWARD OF REASONABLE ATTORNEYS' FEES**

33. The Landlord's conduct is a knowing and willful violation of the automatic stay, warranting it being held in contempt and sanctioned.

9

34. "Any entity that willfully violates the automatic stay is subject to the bankruptcy court's civil contempt power." *In re Adams*, 516 B.R. 361, 369 (Bankr. S.D. Miss. 2014) citing *In re Meinke, Peterson, & Damer, P.C.,* 44 B.R. 105, 108 (Bankr. N.D. Tex. 1984). "For a creditor's violation of the stay to be willful, the creditor must act with knowledge of the stay." *Adams*, 516 B.R. at 369.

35. Here, the Landlord had knowledge of the stay as of 11:09 AM on August 16. *See* Exhibit "C."

36. A party may be found to be in contempt because of a willful violation of the automatic stay. *See, e.g.*, *Adams*, 516 B.R. at 369 citing *Sanchez v. Ameriquest Mortg. Co. (In re Sanchez),* 372 B.R. 289, 310 (Bankr. S.D. Tex. 2007).

## **THE LANDLORD PAYING YGL ITS ATTORNEYS' FEES IS WARRANTED**

37. YGL is not an individual. Therefore, for non-individuals, "contempt proceedings are the proper means of compensation and punishment for willful violations of the stay." *In re Worldcom, Inc.*, 361 B.R. 697, 721 (Bankr. S.D.N.Y. 2007), citing *In re Chateaugay Corp.*, 920 F.2d 183, 186 (2nd Cir. 1990) and *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1104 (2nd Cir. 1990).

38. That is what YGL seeks.

**Actual Damages**

39. When contempt is found, the Court can enter judgment against ST and in YGL's favor for YGL's damages resulting from the contempt/stay violation. *See In re Lehman Brothers Holdings Inc.*, 2013 WL 6283572, at *3 (Bankr. S.D.N.Y. 2013) citing *In Weber v. SEFCU*, 719 F.3d 72 (2d Cir. 2013); *In re Windstream Holdings, Inc.*, 627 B.R. 32, 48 (Bankr. S.D.N.Y. 2021); *In re American Medical Utilization Management Corporation*, 494 B.R. 626, 639 (Bankr. E.D.N.Y. 2013).

40. YGL is entitled to recover its attorneys' fees and expenses incurred in seeking redress for ST's Automatic Stay violations and all other damages caused by ST's Automatic Stay violation, including the $20,000 in missing cash and computers.

**Punitive Damages**

41. Punitive damages may also be assessed for contemnors violating the Automatic Stay. *In re TS Employment, Inc.*, 597 B.R. 494, 536–37 (Bankr. S.D.N.Y. 2019); *Medical Utilization Management Corporation*, 494 B.R. at 639 (Discussing the possibility).

42. "[T]he purpose of punitive damage awards is to punish the [wrongdoer]

and to deter him and others from similar conduct in the future." *Vasbinder v. Scott*, 976 F.2d 118, 121 (2nd Cir.1992). "[P]unitive damages are typically awarded in cases where there is particularly egregious creditor misconduct." *DiGeronimo v. Weissberg (In re DiGeronimo)*, 354 B.R. 625, 644 (Bankr. E.D.N.Y. 2006) (discussing punitive damages in the context of civil contempt for violating the discharge injunction under § 524).

43. ST's Automatic Stay violation is remarkably egregious.

44. ST is interfering with YGL's operations, access to the Property and purpose.

45. Despite being told repeatedly that it was violating the Automatic Stay, ST did not relent. Thus necessitating this Motion.

## THE NEED FOR AN ORDER TO SHOW CAUSE

46. Pursuant to Rule 9077-1 of the Local Rules of United States Bankruptcy Court for the Eastern District of New York, the Debtor requests that this Motion be brought on by order to show cause, rather than by notice of motion, to quickly resolve the issues raised by this Motion and stop ST from further injuring YGL and its students.

47. To achieve this end, the Debtor asks this Court to issue the Order to Show Cause which enables the Court to immediately enjoin ST's Automatic Stay violations and set an expedited hearing date.

48. Proceeding in this manner is not unreasonably onerous, burdensome or prejudicial.

**<u>Irreparable Injury to YGT</u>**

49. Interference with real property rights is generally considered "irreparable injury." *See Varsames v Palazzolo,* 96 F. Supp. 2d. 361, 367 (S.D.N.Y. 2000) ("Deprivation of an interest in real property constitutes irreparable harm"); *Seven-Eleven, Inc. v. Khan*, 977 F. Supp. 2d. 214, 234 (E.D.N.Y. 2013); *FAMO, Inc. v. 521 Fifth Ave., LLC*, 17 Misc. 3d 1108(A) (Sup. N.Y. Cty 2007) (". . .party's loss of the possession and use of real property is an irreparable injury warranting injunctive relief."); *Brody v Vil. of Port Chester*, 2005 WL 13833, at *3 (S.D.N.Y. Jan. 4, 2005).

50. Similarly, interference with the automatic stay afforded debtors and their estates is considered irreparable injury. *See In re Prudential Lines, Inc*., 107 B.R. 832, 835 (Bkrtcy. S.D.N.Y. 1989) citing *Beker Ind. Corp. v. Florida Land and Water Adjudicatory Commission (In re Beker Ind. Corp.)*, 57 B.R. 611, 621 (Bankr. S.D.N.Y. 1986) (Where an act would

13

violate the automatic stay, irreparable harm is established by the violation since Congress, by legislatively staying such acts, has determined that they cause irreparable injury to the estate.); *In re Biolitec, Inc.*, 2015 WL 351201, at *12 (Bankr. D.N.J., 2015) (". . . violations of the automatic stay, Sale Order, and TRO inflicted irreparable harm upon the Debtor. . .); *Gumport v. Interstate Commerce Comm'n (In re Transcon*, 147 B.R. 770, 775 (Bankr. C.D. Cal. 1992) (When the act sought to be enjoined is a violation of the automatic stay, no showing of irreparable harm is required.).

51. Regardless, "the usual grounds for injunctive relief, such as irreparable injury, need not be shown in a proceeding for an injunction under section 105." *In re Adelphia Communications Corp.*, 345 B.R. at 85 (Bankr. S.D.N.Y. 2006) citing *C & J Clark America, Inc. v. Carol Ruth, Inc. (In re Wingspread Corp.)*, 92 B.R. 87, 92 (Bankr. S.D.N.Y. 1988).

52. An 11 U.S.C. § 105(a) injunction is warranted to preserve this Court's jurisdiction and YGL's reorganization prospects.

WHEREFORE, the Debtor requests that this Court issue the pre-fixed order to show cause, grant the Motion and issue orders: pursuant to 11 U.S.C. § 105 and its inherent powers: (i) adjudging respondent Landlord to be in ongoing contempt for willful violation of the Automatic Stay afforded the Debtor in this

14

case, by 11 U.S.C. § 362(a); (ii) directing the Landlord to remove any impediments to the Debtor accessing and using the Property; (iii) directing the Landlord to cease interfering with the Debtor's operations and business; (iv) ordering Landlord pay (a) YGL's attorneys' fees related to this Motion, efforts to remove the access and use impediments to the Property and enforcing the Automatic Stay and (b) $20,000 for cash and computers currently missing from the Property; (v) ordering Landlord to pay a fine of five thousand dollars ($5,000.00) for each day it fails to comply with the Automatic Stay; and (vi) granting such other, further, and different relief the Court deems proper.

Dated: August 17, 2023
      New York, New York

Respectfully submitted,

/s/ Leo Jacobs
    Leo Jacobs
**JACOBS P.C.**
595 Madison Avenue, 39th Floor
New York, NY 10022
(212) 229-0476
leo@jacobspc.com