**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| YESHIVA GEDOLA LUBAVITCH INC., | Case No. 23-42923-JMM |
| Debtor. | Hon. Jil Mazer-Marino |

**THE LANDLORD'S MOTION TO (I) CONFIRM THE ABSENCE OF THE
AUTOMATIC STAY UNDER 11 U.S.C. § 362(b)(10) AND ORDERING
THE DEBTOR'S IMMEDIATE SURRENDER OF THE PREMISES,
OR IN THE ALTERNATIVE, FOR ENTRY OF AN ORDER
GRANTING RELIEF FROM THE AUTOMATIC STAY UNDER
11 U.S.C. §§ 362(d)(1) AND (2) AND (II) DISMISS THE BANKRUPTCY CASE**

LOEB & LOEB LLP
Daniel B. Besikof
Noah Weingarten
345 Park Avenue
New York, New York 10154
(212) 407-4000
dbesikof@loeb.com
nweingarten@loeb.com

YVLS ESQ. LLC
Yifat V. Schnur
26 Broadway, 19th Flr.
New York, New York 10004
(347) 268-5347
yifat@yvlslaw.com

*Attorneys for Landlord Sharei Torah*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

JURISDICTION AND VENUE .................................................................................4

BACKGROUND ........................................................................................................4

RELIEF REQUESTED................................................................................................10

BASIS OF RELIEF REQUESTED .............................................................................11

    I.     The automatic stay does not prevent the Landlord from obtaining possession of the premises under 11 U.S.C. § 362(b)(10)....................................11

    II.    If the automatic stay is applicable, relief should be granted for cause, including for lack of adequate protection, under Bankruptcy Code Section 362(d)(1). ..................................................................................13

        A.     Cause exists because the Debtor has no interest in the Premises and the Debtor is damaging – not adequately protecting – the Premises. ........................................................................................13

        B.     The Debtor cannot provide the Landlord with adequate protection. ...................................................................................15

        C.     The relevant *Sonnax* factors weigh in favor of granting stay relief. ...........................................................................................15

        D.     The Premises should be ordered returned to the Landlord immediately......................................................................................17

    III.    The automatic stay should also be lifted because the Debtor has no equity in the Premises and the Premises are not necessary for a reorganization. ..............17

    IV.    The Debtor's Chapter 11 Case should be dismissed for cause under section 1112(b)......................................................................................18

        A.     The Chapter 11 Case should be dismissed as a bad faith two-party dispute.......................................................................................19

        B.     The Chapter 11 Case should be dismissed because of the Debtor's malfeasance. ...............................................................20

WAIVER OF BANKRUPTCY RULE 4001(a)(3)........................................................20

RESERVATION OF RIGHTS .....................................................................................21

CONCLUSION............................................................................................................21

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re AdBrite Corp.*,
 290 B.R. 209 (Bankr. S.D.N.Y. 2003) ..............................................................18, 20

*In re Ancona*,
 No. 14-10532 (MKV),
 2016 Bankr. LEXIS 4114 (Bankr. S.D.N.Y. Nov. 30, 2016) ................................18

*In re Anton*,
 145 B.R. 767 (Bankr. E.D.N.Y. 1992)....................................................................16

*In re BH S&B Holdings, LLC*,
 439 B.R. 342 (Bankr. S.D.N.Y. 2010) ..............................................................18, 20

*C-TC 9th Ave. Pshp. v. Norton Co. (In re C-TC 9th Ave. Pshp.)*,
 113 F.3d 1304 (2d Cir. 1997)..................................................................................19

*In re de Kleinman*,
 136 B.R. 69 (Bankr. S.D.N.Y. 1991) ..................................................................2, 13

*In re Éclair 159 Bakery Ltd.*,
 255 B.R. 121 (Bankr. S.D.N.Y. 2000) ....................................................................14

*In re El Mariachi, LLC*,
 No. 07-32407 (ASD),
 2008 Bankr. LEXIS 4238 (Bankr. D. Conn. July 13, 2008)...................................11

*In re Griggsby*,
 404 B.R. 83 (Bankr. S.D.N.Y. 2009) ......................................................................14

*In re Neville*,
 118 B.R. 14 (Bankr. E.D.N.Y. 1990)................................................................11, 12

*In re Sonnax*,
 907 F.2d 1280 (2d Cir. 1990)............................................................................13, 15

*In re Sterling*,
 No. 14-12608-shl,
 2018 Bankr. LEXIS 18 (Bankr. S.D.N.Y. Jan. 5, 2018)............................13, 15, 16

*In re Syndicom Corp.*,
 268 B.R. 26 (Bankr. S.D.N.Y. 2001) ......................................................................14

*In re Touloumis*,
   170 B.R. 825 (Bankr. S.D.N.Y. 1994)......................................................................15, 16

*Tulis v. Gordos North Rest. Corp. (In re Gordos Rest. Corp.)*,
   643 B.R. 1 (Bankr. S.D.N.Y. 2022).................................................................................11

*In re Winer*,
   No. 08-40476-ess,
   2008 Bankr. LEXIS 1535 (Bankr. E.D.N.Y. May 13, 2008)...........................................17

**Statutes**

11 U.S.C. § 105(a) ...........................................................................................................4

11 U.S.C. § 362(b)(10) .......................................................................................... *passim*

11 U.S.C. § 362(d)(1) ................................................................................................13, 15

11 U.S.C. § 362(d)(2) .....................................................................................................17

11 U.S.C. § 1112.................................................................................................4, 10, 18

28 U.S.C. § 157................................................................................................................4

28 U.S.C. § 1334..............................................................................................................4

28 U.S.C. § 1408..............................................................................................................4

28 U.S.C. § 1409..............................................................................................................4

**Other Authorities**

Fed. R. Bankr. P. 4001 ...................................................................................................20

Sharei Torah a/k/a Shaarei Torah (the "Landlord"), by and through its undersigned counsel, respectfully submits this motion (the "Motion") to: (1) confirm the absence of the automatic stay under 11 U.S.C. § 362(b)(10) and order the above captioned debtor (the "Debtor") to immediately surrender the premises; in the alternative, grant relief from the automatic stay under 11 U.S.C §§ 362(d)(1) and (2); and (2) dismiss the above captioned Chapter 11 bankruptcy case (the "Chapter 11 Case"). In support of this Motion, the Landlord submits the Declaration of Abraham Rosenberg (the "Rosenberg Decl."), the sole Executive Director of the Landlord, and respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Debtor has occupied the Premises on a month-to-month basis as a holdover tenant for more than ten years after expiration of the lease for the Premises in 2012 – more than ten years ago. Following more than four years of litigation seeking termination of the month-to-month tenant relationship, and to force the Debtor to leave the Premises, the Debtor was finally ordered to vacate the premises by the Civil Court for the State of New York by no later than September 26, 2022. This order was reaffirmed again on May 19, 2023 by further order requiring the Debtor to vacate the premises by July 31, 2023. The Debtor ultimately vacated the Premises in accordance with that order after causing incredible damage to the Premises, and the Landlord retook possession of the Premises and changed the locks.

2. The Debtor evidently regrets vacating the Premises and within minutes of filing for bankruptcy, and having sought no formal relief from this or any other Court, elected to exercise self-help remedies. On August 16, the Debtor made several attempts to access the Premises that were repelled by the Police. On August 17, the Debtor's representatives actually broke into the Premises, climbing ladders to access second story windows and using crow bars to remove boards that had been placed over doors and windows to secure the premises (due to the damage Debtor

caused prior to and during vacating the Premises – thus further damaging the Premises).  Notably, this physical invasion of the Premises was evidently supported by the Debtor's counsel, who was present while the Debtor's representatives recaptured the Premises and ran interference with the Police.

3.      This dangerous behavior by the Debtor and its counsel is both shocking and lacking in basis under the law.  The Debtor had no legal or possessory interest in the Premises as of the Petition Date, having vacated the premises at least two weeks earlier pursuant to court order.  It is axiomatic that "the automatic stay does not extend to the Debtor a property right which [the Debtor] does not already have . . . [and bankruptcy] does not create longer leases or leases with different rent terms than agreed to between the parties prior to bankruptcy however much a debtor would be benefitted." *In re de Kleinman*, 136 B.R. 69, 72 (Bankr. S.D.N.Y. 1991).  Moreover, even if the Debtor did somehow have a remaining possessory interest in the Premises, the law is clear that a bare possessory interest, in this context, is not protected by the automatic stay.  Indeed, Section 362(b)(10) of the Bankruptcy Code provides that "the automatic stay does not apply to an effort of a landlord of non-residential real property to retake possession of property that is the subject of an expired lease."

4.      To the extent the Court determines that the Debtor somehow does have an interest in the Premises that is subject to protection by the automatic stay, ample cause exists to lift the stay.  A warrant of eviction has been issued, which the state court declined to vacate.  Courts routinely find cause for lifting the stay where a warrant of eviction has already been issued.  Cause further exists because the Debtor has no interest in the Premises, and certainly no interest that could benefit the Debtor's estate or reorganization efforts.  There is no continuing lease to assume.

There are no circumstances under which the Debtor has a long-term (or even short-term) future in this Premises.

5.      Cause also exists for lifting the stay because the Debtor has badly damaged the Premises, leaving it in such abject disrepair that the Landlord is unable to procure insurance on the Premises.  The Debtor continues – literally to this day – to cause additional physical damage to the Premises.  The Landlord is concerned not only for the wellbeing of the Premises but also of the occupants – mostly high school students, some of whom the Debtor previously boarded at the Premises as part of their schooling.  Additionally, the automatic stay may be lifted because the Debtor lacks equity in the Premises and the Premises are not necessary to an effective reorganization.

6.      In addition, the Debtor's case should also be dismissed as a bad faith filing.  The Debtor admits that it filed solely to stymie the Landlord's eviction efforts.  As such, it is a prototypical two-party bad faith filing, commenced solely with the hopes of obtaining litigation advantage and depriving a single party – the Landlord – of rights.  The Debtor's bad faith actions before and since filing further supports the dismissal of this case.

7.      Bankruptcy is designed to assist an honest debtor with obtaining a fresh start.  That is not the purpose of this bankruptcy case – and the Debtor could not suggest with a straight face that it is.  Rather, this bankruptcy case is the last act of a nearly decade-long cat and mouse game, during which the Debtor and its principals have (i) steadfastly refused to vacate the Premises, notwithstanding it almost entirely stopped paying rent in 2016; (ii) caused substantial damage to the Premises, rendering the Premises uninsurable and hazardous to occupy; (iii) engaged in vexatious litigation (losing several sets of counsel to resignation in the process); and (iv) incurred more than $600,000 in unpaid back rent.  This honorable Bankruptcy Court should not

countenance another day of this abuse, and it should not allow the bankruptcy process to be used to further the Debtor's untoward aims.

8.      Based on the foregoing, and as further set forth below, the Motion should be granted.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a), 362(b) and (d), and 1112.

## BACKGROUND

**A.      The Parties.**

10.      The Landlord is a registered 501(c)(3) organization that owns the real property located at 92-15 69th Avenue, Forest Hills, NY 11375 (the "Premises").  The Debtor's sole principal, 78-year old Abraham Rosenberg, has been dragged into years of litigation and scorched earth tenant issues by the Debtor and its principals.  Like the Debtor, the Landlord also operates a yeshiva school.

11.      The Debtor operates a yeshiva (a Jewish school) on the Premises.  Its principals, non-Debtors Mendel Hendel and Menachem Mendel Shagalow (the "Debtor's Principals") were the tenants under the long-expired Lease for the Premises under which the Debtor operated.

**B.      The Expired Lease; the Landlord's Efforts to Work with the Debtor's Principals.**

12.      On August 2, 2011, the Landlord entered into a lease agreement (the "Expired Lease") with the Debtor's Principals to lease the Premises.  Rosenberg Decl. **Ex. 1**.

13.      The Expired Lease had a term of just 12 months, beginning on August 2011 and expiring in August 2012.  The Landlord leased the Premises to the Debtor's Principals – two

Rabbis – for purposes of operating a Yeshiva. Indeed, the Landlord's principal leased the Premises out of (a long expired) respect for the Debtor's Principals as "religious figures" and his respect for the religious institution that the Debtor represented.

14.     Following the Lease's expiration, the Landlord orally permitted the Debtor to continue occupying the Premises on a month-to-month basis on the condition that it and the Debtor's Principals pay certain back rent that was already due under the Expired Lease and continue to be responsible for paying $10,500 per month in rent, plus the expenses, maintenance, and other charges associated with operating the Premises.

15.     For approximately four years, the Debtor operated out of the Premises as a month-to-month tenant. That arrangement lasted until 2016, when the situation changed dramatically for the worse. More specifically, in 2016, the Debtor stopped paying rent for the Premises, despite the Debtor's occupancy of the Premises and the continued operation of the yeshiva.

16.     The Landlord repeatedly contacted the Debtor's Principals, demanding payment of all past-due rent and other amounts due and owing for fees, violations and utilities. No payment was made. This failure to pay rent and other amounts to the Landlord caused the Landlord to incur significant damages. Without that rental income, the Landlord was unable to service its mortgage on the Premises and incurred over $130,000 in fees.

17.     In addition to their failure to pay rent, the Debtor's Principals and the Debtor also caused the Premises to fall into abject disrepair and did not pay for the Premises' carrying expenses as the parties had agreed. Pictures of the interior of the Premises evidencing the damage caused by the Debtor and the Debtor's Principals to the Premises are attached to the Rosenberg Decl. as **Exhibit 2**. The failure to maintain the Premises has caused the Landlord to accumulate more than $50,000 in violations. While the Debtor and the Debtor's Principals were responsible for paying

for these violations, they never did.  Indeed, the Premises fell into such a state of disrepair that the Landlord is now unable to obtain insurance on the Premises.  The Landlord is aware that certain yeshiva students at one point boarded at the Premises as part of their schooling.  The Landlord worries for the safety of the Debtor's students – and the wellbeing of the valuable Premises – because of the Debtor's failure to maintain the Premises as agreed.

18.     Until very recently, the Landlord has consistently been denied access to the Premises and therefore could not remediate the issues.  Even if the Landlord could fix the problems, it is the obligation of the Debtor to remediate the violations that it has caused. Unfortunately, violations, fines, and penalties continued to accumulate against the Premises in the Landlord's name.

**C.     Procedural history of the Holdover Action in the Civil Court and action to recover past-due amounts.**

19.     At the end of its rope, after more than two years of non-payment and ignored demands for the Debtor and the Debtor's Principals to honor their commitments to the Landlord, on December 10, 2018, the Landlord, commenced a holdover proceeding in the Civil Court of the City of New York, County of Queens (the "Civil Court") against the Debtor, the Debtor's Principals, and others (collectively, the "Defendants"), captioned *Shaarei Torah* v. *Hendel, et al.*, L&T Index No. 77973/18 (the "Holdover Action").  Rosenberg Decl. **Ex. 3**.

20.     On February 7, 2020, the Landlord and Defendants entered into a stipulation of settlement (Rosenberg Decl. **Ex. 4**) (the "First Stipulation"), under which, the Defendants, *inter alia*, consented to a judgment of possession in favor of the Landlord with execution stayed until July 31, 2020.  On that same day, the Civil Court entered judgment in favor of the Landlord (Rosenberg Decl. **Ex. 5**) (the "First Judgment"), awarding possession of the Premises to the

Landlord and issuing a warrant of eviction against the Defendants, with execution stayed until August 1, 2021.

21.     Prior to the expiration of the execution stay period, on July 8, 2021, the parties entered into a second *Stipulation of Settlement* (Rosenberg Decl. **Ex. 6**) (the "Second Stipulation"), under which the execution of the warrant of eviction was stayed until March 31, 2022 – the middle of the school year. Additionally, the Second Stipulation provided that from August 2021 through March 2022, the Defendants would pay the Landlord $14,000 per month by the 5th of each month and reimburse the Landlord for violations that had been placed upon the Premises "due to the [Defendants]' negligence."

22.     On July 13, 2021, the Civil Court entered judgment (Rosenberg Decl. **Ex. 7**) (the "Second Judgment"), yet again, awarding possession of the Premises to the Landlord and ordered that "a warrant of eviction shall issue removing all named respondents from the described premises." The Second Judgment further provided that "execution of the warrant is stayed per [the Second Stipulation]. The earliest date upon which execution may occur is 09/26/2022."

23.     On September 30, 2022, the Civil Court issued its *Decision and Order* (Rosenberg Decl. **Ex. 8**) (the "Eviction Order"), finding that: "the final stay of execution of the warrant has expired, and respondents are in violation of the so-ordered [First Stipulation] as modified, petitioner is entitled to the issuance and execution of a warrant of eviction forthwith."

24.     The Eviction Order further granted the Landlord an amended judgment of possession "without any stay" and provided that a "new warrant of eviction shall issue forthwith without any stay, that is, with an earliest execution date [of] September 26, 2022." *Id.*

25.     On January 1, 2023, the Landlord commenced a separate action against the Defendants for approximately $600,000 in unpaid use and occupancy costs of the Premises in the

Supreme Court of the State of New York, County of Queens (the "Supreme Court") in the action captioned *Sharei Torah v. Hendel*, *et al.*, Index No. 701131/2023 (the "Unpaid Rent Action"). As of the Petition Date, the Unpaid Rent Action was pending and discovery was ongoing, though the Debtor has refused to comply with court ordered discovery deadlines and has not engaged in that action in good faith. Most recently, the Debtor's attorney Bradley Zelenitz filed a motion to withdraw as counsel. Said motion was granted.

26.     On or around April 20, 2023 – approximately four months ago – the City Marshall served a *Notice of Eviction – 14 Days* on the Defendants and other "John Doe" occupants within the Premises (Rosenberg Decl. **Ex. 9**).

27.     On April 25, 2023, the Defendants moved to vacate the Eviction Order. Tellingly, the Defendants never claimed to have a continuing leasehold interest. Rather, the Defendants argued that they needed to retain access to the Premises in order to avoid disruption of its students' education through the end of the academic school year, which they represented ended in July 2023.

28.     On May 26, 2023, the Civil Court entered its *Decision/Order* (Rosenberg Decl. **Ex. 10**) (the "Eviction Affirmance Order"), under which, the Civil Court denied vacatur of the Eviction Order, but stayed execution of the warrant of eviction through July 31, 2023 on the condition that the Debtor tender $14,000 per month use and occupancy by May 25, 2023, June 10, 2023, and July 10, 2023. Under the Eviction Affirmance Order, the Debtor, the Debtor's Principals, and other occupants were required to vacate the Premises no later than July 31, 2023.

29.     No later than July 31, 2023, the Debtor complied with the terms of the Eviction Affirmance Order and vacated the Premises. The Premises were left unlocked and unsecured and in a state of incredible disrepair. *See* Rosenberg Decl. **Ex. 2**. After retaking possession of the

Premises, the Landlord changed the locks to ensure that the Premises was secured and boarded up certain windows and doors to prevent further damage to the Premises.

**D.      The Debtor's misconduct.**

30.      On August 16, 2023 (the "Petition Date"), the Debtor filed a bare bones voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The petition does not include any of the other required documentation.  For example, the Debtor failed to file a list of the Debtor's top creditors, schedules of assets and liabilities (or any other document required under Bankruptcy Rule 1007).  This bankruptcy case was not carefully planned to reorganize its business affairs.  It was filed at the last minute in hopes of using the automatic stay to reclaim – for however long – the Premises that the Debtor had vacated pursuant to the Civil Court's order, to exert pressure on the Landlord and to continue the cat-and-mouse game that has been ongoing since 2016.

31.      Minutes or hours after filing the petition – after having been out of possession for at least two weeks (and perhaps longer) – the Debtor attempted to re-access the Premises.  Because the locks had been changed and the doors were secured (and the Premises boarded up due to the damage to the premises), the Debtor's representatives were unable to access the Premises on the Petition Date and were turned away by the Police.

32.      The Debtor used this encounter to manufacture a purported stay violation, so that the Debtor could seek sanctions against the Landlord, among other things – a transparent effort to garner sympathy for the Debtor, distract the Court from the Debtor's years-long pattern of wrongdoing and abuse and to increase pressure on the Landlord and drive up its out-of-pocket costs.

33.      The Debtor further sought sanctions and to enforce the automatic stay by letter filed just hours after the Debtor's case was commenced.  [Dkt. No. 2-3].  The Court declined to consider the Debtor's letter request for sanctions and instead advised that the Debtor should seek its desired

relief – ultimately to be restored to possession of the Premises and sanctions against the Landlord – by Motion.

34.     Rather than make the motion suggested by the Court (or a turnover motion or other appropriate filing) – and without ever first attempting to obtain any formal relief from this Court – on August 17, 2023, the Debtor returned to the premises, this time with its counsel, Mr. Jacobs. Undeterred by the police, with which Mr. Jacobs ran interference, the Debtor and its cohorts broke into the Premises and illegally reclaimed possession of the Premises that it had abandoned just weeks earlier. This time the Debtor resorted to removing boards placed on windows and doors as a result of damage caused by the Debtor (thus causing more damage to the Premises) and climbing ladders to break into second floor windows – evidently with the full-throated support of Mr. Jacobs, among other things. This shocking behavior usurped the Court's role in adjudicating the parties' rights in respect of the Premises and was recorded on film. *See* Rosenberg Decl. **Exs. 11 and 12**.

## RELIEF REQUESTED

35.     By this Motion, the Landlord respectfully requests that the Court enter an Order, substantially in the form annexed hereto:

(a)     Confirming that the automatic stay under to 11 U.S.C. § 362(a) does not apply to any acts that the Landlord takes to reclaim possession of the Premises under 11 U.S.C. § 362(b)(10), including without limitation, seeking civil and criminal contempt of court sanctions against the Debtor for violating the Civil Court's First and Second Judgments, the Eviction Order, and the Eviction Affirmance Order; and ordering that the Premises be surrendered immediately to the Landlord. Alternatively, in the event the Court finds that the automatic stay applies, lifting the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (2).

(b)     Dismissing the Chapter 11 Case for cause under 11 U.S.C. § 1112.

(c)     Granting such other, further, and different relief as the Court deems appropriate.

## BASIS OF RELIEF REQUESTED

**I.  The automatic stay does not prevent the Landlord from obtaining possession of the premises under 11 U.S.C. § 362(b)(10).**

36.  Section 362(b)(10) provides that the commencement of a bankruptcy case does not operate as a stay "of any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property."

37.  "The legislative history of Section 362(b)(10) indicates that it was intended to permit landlords to proceed promptly in Civil Court to reclaim possession of the non-residential lease premises where the lease expired by its own term and to finalize landlord/tenant disputes such as the one that is the subject of this case." *In re Neville*, 118 B.R. 14, 18 (Bankr. E.D.N.Y. 1990) (confirming landlord's action were not stayed by the automatic stay under 11 U.S.C. § 362(b)(10)).  Indeed, *Neville* makes clear that "[t]he language of Section 362(b)(10) clearly indicates that it is not necessary for a landlord to move in the Bankruptcy Court to vacate the automatic stay when the Debtor is operating under a lease of non-residential real property that has [expired]." *Id.*  The *Neville* court went on to hold that the "landlord may do *whatever is necessary and appropriate*" to obtain possession of the property. *Id.* (emphasis added).

38.  Courts regularly grant orders under 11 U.S.C. § 362(b)(10), confirming that the automatic stay does not apply to landlord action to regain control of property when a debtor's leasehold interest has expired pre-petition. *See, e.g.*, *Tulis v. Gordos North Rest. Corp. (In re Gordos Rest. Corp.)*, 643 B.R. 1, 15-16 (Bankr. S.D.N.Y. 2022) (declaring "that because of the prepetition termination of the lease by the expiration of its stated term (and the issuance of the warrant of eviction), the automatic stay under 11 U.S.C. § 362(a) did not apply to their interest in the premises."); *In re El Mariachi, LLC*, No. 07-32407 (ASD), 2008 Bankr. LEXIS 4238, at *1-4

(Bankr. D. Conn. July 13, 2008) (automatic stay did not apply to actions by landlord to regain possession of premises under "under the express provisions of Section 362(b)(10)" because lease expired pre-petition); *see also In re Neville*, 118 B.R. at 19.

39.     The outcome that 11 U.S.C. § 362(b)(10) was intended to produce is entirely fair and makes sense.  That is because "[o]nce a lease has been terminated, the Bankruptcy Court does not have the power to revive it even through its equitable powers."  *In re Neville*, 118 B.R. at 18. A debtor's naked possessory interest in a property – where the lease has already expired – does not give the debtor rights in the property.  Under such a circumstance, it is entirely equitable that a landlord be permitted to take actions to evict the debtor.

40.     Here, it is undisputed that the Expired Lease expired more than a decade ago by its terms.  The month-to-month lease with the Debtor put into effect thereafter has also terminated. The Debtor has accordingly been a holdover for the last 7 years, while the Landlord actively sought to remove the Debtor from the Premises (while being made to suffer at the Debtor's hands in the process).

41.     To the extent the month-to-month landlord/tenant relationship continued during that 7-year period, the Civil Court made clear in the Eviction Affirmance Order that it expired on July 31, 2023, when the Debtor and the Debtor's Principals were required to vacate the Premises. Moreover, as noted above, the Debtor did in fact vacate the Premises by removing itself and its possessions from the Premises as required by the July 31, 2023 order.

42.     Evidently the Debtor desires to restore and continue its possession of the Premises and filed bankruptcy solely in hopes of achieving that goal by invoking the automatic stay. However, the "automatic stay does not extend to the Debtor a property right which [the Debtor] does not already have . . . [and bankruptcy] does not create longer leases or leases with different

rent terms than agreed to between the parties prior to bankruptcy however much a debtor would be benefitted." *In re de Kleinman*, 136 B.R. 69, 72 (Bankr. S.D.N.Y. 1991). As Judge Beatty noted in *Kleinman*: "it would help the Debtor's reorganization if she owned a McDonald's franchise. But she does not, and the court cannot create one for her simply because it would be beneficial to her efforts to reorganize." *Id.* The same is true here. Any lease for this Premises, whether written or oral, expired long ago, and Section 362(b)(10) permits the Landlord to retake possession of the Premises without consideration of the automatic stay.

## II.     If the automatic stay is applicable, relief should be granted for cause, including for lack of adequate protection, under Bankruptcy Code Section 362(d)(1).

43.     Bankruptcy Code Section 362(d)(1) provides that "the court shall grant relief from the automatic stay" "for cause, including the lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1). The term "cause" is not defined in the Bankruptcy Code and is "a broad and flexible concept that must be determined on a case-by-case basis." *In re Sterling*, No. 14-12608-shl, 2018 Bankr. LEXIS 18, at *13 (Bankr. S.D.N.Y. Jan. 5, 2018) (citing *Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002)).

44.     Cause is undeniably present in this case because: (i) the Debtor has no interest in the Premises – beyond at most a limited possessory interest – because the Expired Lease and any follow-on month-to-month lease has long expired; (ii) the Landlord has not been afforded adequate protection of its interest in the Premises (on the contrary, the Debtor is actively harming the Premises); and (iii) every applicable *Sonnax* factor weighs overwhelmingly in favor of lifting the automatic stay.

### A.     Cause exists because the Debtor has no interest in the Premises and the Debtor is damaging – not adequately protecting – the Premises.

45.     Courts have routinely found cause exists where, as here, a warrant of eviction has been issued and there is no reasonable possibility that the state court would vacate the warrant of

eviction. *See, e.g.*, *In re Griggsby*, 404 B.R. 83, 93 (Bankr. S.D.N.Y. 2009) (noting that "[t]he prepetition issuance of a warrant may provide 'cause' to terminate the automatic stay pursuant to § 362(d)(1)," and finding cause to vacate the stay because debtor "failed to show grounds upon which the Civil Court would vacate the warrant of eviction"); *In re Syndicom Corp.*, 268 B.R. 26, 46 (Bankr. S.D.N.Y. 2001) (granting landlord relief from stay because there was no pending state court proceeding to vacate the warrant of eviction, and debtor did not show reasonable possibility that the state courts would vacate the warrant of eviction based on prior state court decision denying even a stay of eviction); *see also In re Éclair 159 Bakery Ltd.*, 255 B.R. 121, 136 (Bankr. S.D.N.Y. 2000) (granting landlord stay relief to remove debtor from possession of premises and noting that "where state court litigation is not pending or in the cards, or where the debtor has failed to show any basis for a belief that the state court will grant relief, the prepetition termination of the landlord-tenant relationship will at least normally provide cause for relief from the stay").

46.     Here, the Civil Court entered the First and Second Judgments and has already declined to vacate the Eviction Order by its entry of the Eviction Affirmance Order, which required the Debtor to vacate the Premises by July 31, 2023.  Given the Civil Court's existing rulings – and the Debtor's inappropriate efforts to exercise self-help remedies in stark violation of the Civil Court's Eviction Affirmance Order, there is no reasonable possibility that the Civil Court would vacate the warrant of eviction.  Even if it were to do so, the Landlord comes back to the fact that the Debtor's right to occupy the Premises, either under the Expired Lease or as a month-to-month tenant, expired long ago, and the Debtor has no entitlement to occupy the Premises.  The Landlord does not want (and has not wanted for several years) the Debtor as a tenant, and there is no basis in law to foist the Debtor on the Landlord and Premises.

**B.      The Debtor cannot provide the Landlord with adequate protection.**

47.      Moreover, Section 362(d)(1) expressly provides that "cause" exists where there is a "lack of adequate protection of an interest in property."  The lack of adequate protection here is clear.  The Debtor has ransacked the Premises and continues to show wanton disregard for the wellbeing of the Premises.  *See* Rosenberg Decl. **Ex. 2**.  Each day the Landlord is deprived of possession of the Premises is another day that the Landlord faces the imposition of fines, penalties and other risk of loss relating to the condition of the Premises.  This basis alone is grounds for stay relief.

**C.      The relevant *Sonnax* factors weigh in favor of granting stay relief.**

48.      Courts in this Circuit assess the relevant *Sonnax* factors for determining that "cause" exists to lift the stay.  *In re Sonnax*, 907 F.2d 1280, 1286 (2d Cir. 1990) (listing factors); *In re Sterling*, 2018 Bankr. LEXIS 18, at *12-13 (applying *Sonnax* factors).

49.      The *Sonnax* factors are:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending [the action]; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) the impact of the stay on the parties and the balance of harms."

*In re Sterling*, 2018 Bankr. LEXIS 18, at *12-13 (citing *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990)).

50.      Not every *Sonnax* factor will be relevant in every case and only the relevant factors may be considered.  *See In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994); *In re Sterling*,

2018 Bankr. LEXIS 18, at *13-15 (granting stay relief when a majority of relevant factors apply). Moreover, the factors are not assigned equal weight. *See In re Touloumis*, 170 B.R. at 828; *In re Anton*, 145 B.R. 767, 770 (Bankr. E.D.N.Y. 1992).

51.     Here, the only relevant factors are 1, 2, and 12, and each weighs heavily in favor of lifting the stay. Factor 1 is satisfied as stay relief would result in a nearly complete resolution of the issues between the Landlord and the Debtor. The primary issue at play between the parties since the Holdover Proceeding was commenced in 2018 is the Landlord's desire to have the Premises returned and to have the Debtor and the Non-Debtor Principal dispossessed from the Premises. Granting stay relief would immediately resolve that issue.

52.     Factor 2 is also satisfied. Lifting the stay to permit the Landlord to repossess its property would not interfere with this bankruptcy case, because the Debtor has no interest in the Premises and the Debtor cannot reorganize around it. Because the Debtor's leasehold interests have already expired, and the Bankruptcy Code cannot revive an already expired lease, the Debtor cannot continue to occupy it (illegally), nor can the Debtor assume or assign the Expired Lease or any month-to-month lease or otherwise monetize the Debtor's occupancy. Additionally, the Debtor has admitted that it intends to "relocate" and that it has "sufficient assets to facilitate such relocation." Dkt. No. 2, p. 2 (Declaration of Menachem Baruch, the Debtor's "Administrator"). Thus, lifting the stay would have no effect on the Chapter 11 Case.

53.     Finally, factor 12 is satisfied because the balance of harms weighs in favor of evicting the Debtor. *See In re Sterling*, 2018 Bankr. LEXIS 18, at *15 ("[T]he balance of the harms clearly tips in the Movant's favor, due to a long history of non-payment on the Property."). The building is uninsured and in decrepit condition. Meanwhile, the Debtor is permitting high school students to study (and in some cases live) in it, thereby endangering the Debtor's students.

Likewise, the Debtor has shown a complete disregard for the wellbeing of the Premises (*see* photos and videos attached as Exhibits 2 and 11-12). Indeed, the Debtor admits that it has raised nearly $6,000,000 dollars as part of its fundraising. https://www.charidy.com/ttlq/rodal.

        **D.**     **The Premises should be ordered returned to the Landlord immediately.**

54.     The Debtor filed for bankruptcy solely to stymie the Landlord's efforts to recover the Premises. The Debtor has used this bankruptcy court and its bankruptcy filing as a sword and shield to attempt to restore its possessory interest in the Premises improperly. Any order granting stay relief should make clear that the Premises are to be surrendered immediately to the Landlord and that the Debtor's bad-faith bankruptcy filing does not provide the Debtor with any rights in the Premises. Any other result will simply encourage the Debtor to perpetuate its gamesmanship with the imprimatur of this Court.

**III.**     **The automatic stay should also be lifted because the Debtor has no equity in the Premises and the Premises are not necessary for a reorganization.**

55.     Under 11 U.S.C. § 362(d)(2), the Court may grant relief from the automatic stay if "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." This Court has held that a "debtor can have no equity in an expired lease nor can it be considered necessary to an effective reorganization." *In re Winer*, No. 08-40476-ess, 2008 Bankr. LEXIS 1535, at *11 (Bankr. E.D.N.Y. May 13, 2008) (citing *In re Owens*, 30 B.R. 399, 403 (Bankr. S.D.N.Y. 1983)) (internal quotations omitted). Further, the U.S. Supreme Court has held that "property is only necessary to an effective reorganization where . . . there is a reasonable prospect for a successful rehabilitation within a reasonable time." *In re Winer*, 2008 Bankr. LEXIS 1535, at *11 (citation omitted).

56.     Here, the Debtor has no equity in the Premises – nor are the Premises necessary for a reorganization – because the Expired Lease expired pre-petition. As noted above, there is no

remaining lease for the Debtor to assume, and the Landlord will not extend a new lease to the Debtor under any circumstances. There is no possibility that the Debtor could reorganize around the Premises.

**IV.    The Debtor's Chapter 11 Case should be dismissed for cause under section 1112(b).**

57.    Section 1112(b) of the Bankruptcy Code provides that a court "shall" dismiss a Chapter 11 case "for cause" and if it is in the creditors' best interest over converting the case to Chapter 7. *In re BH S&B Holdings, LLC*, 439 B.R. 342, 349 (Bankr. S.D.N.Y. 2010) ("Once a party establishes cause, a court must examine whether dismissal or conversion of a case under Chapter 7 is in the best interests of the creditors and the estate.").

58.    While section 1112(b)(4) enumerates 16 factors that constitute "cause," the 1112(b)(4) factors are "'not exhaustive' and courts are free to consider other factors." *In re BH S&B Holdings, LLC*, 439 B.R. at 346. "[T]he court may consider other grounds and use its equitable powers to reach an appropriate result." *In re AdBrite Corp.*, 290 B.R. 209, 217 (Bankr. S.D.N.Y. 2003) (granting conversion).

59.    "It is well-settled that the filing of a bankruptcy petition in bad faith constitutes 'cause' for dismissal or conversion of a case under Bankruptcy Code." *In re Ancona*, No. 14-10532 (MKV), 2016 Bankr. LEXIS 4114, at *9 (Bankr. S.D.N.Y. Nov. 30, 2016) (granting conversion to Chapter 7); *In re AdBrite Corp.*, 290 B.R. at 218 ("Bad faith "can be grounds for dismissing or converting a case.").

60.    "Once the moving party has made a *prima facie* showing of cause, the burden then shifts to the debtor to demonstrate that the petition was filed in good faith." *In re Ancona*, 2016 Bankr. LEXIS 4114, at *10.

61.    The Chapter 11 Case should be dismissed – with a bar to refiling of at least one year – for the separate and independent reasons that: (i) the filing is clearly a two-party dispute

and (ii) the Debtor has engaged in malfeasance both pre- and postpetition (*i.e.*, vexatious litigation over numerous years; substantially damaging the Premises; engaging in egregious self-help to break into the Premises, rather than obtain a determination of their entitlement to the Premises from this Court by Motion, as it was invited to do by the Court).

**A.     The Chapter 11 Case should be dismissed as a bad faith two-party dispute.**

62.     The Second Circuit has identified eight factors that support a finding that a chapter 11 case was commenced in bad faith.  *C-TC 9th Ave. Pshp. v. Norton Co. (In re C-TC 9th Ave. Pshp.)*, 113 F.3d 1304, 1311 (2d Cir. 1997).  A case should be dismissed as having been filed in bad faith where:

> (1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes.

*Id.*

63.     These factors strongly support dismissal of the case.  The Debtor has one primary (purported) asset – the Premises – which is the subject matter of this entire bankruptcy case.  That asset is the subject of an eviction action as a result of unpaid rent and other occupancy cost arrearages.  The Debtor's financial condition is very much a two-party dispute between the Debtor and the Landlord, which could be resolved – and indeed had been fully resolved by entry of the Eviction Affirmance Order – in the Holdover Action.  The Debtor does not complain that it is insolvent or unable to pay.  Indeed, the Debtor's Charidy website indicates that the Debtor has raised $6,000,000, which indicates that the Debtor is not insolvent.

64.    **Finally, the timing of the Debtor's filing makes absolutely clear that the filing was designed to delay or frustrate the legitimate efforts of the Landlord to enforce its rights. For all of those reasons, the Debtor's case is in the utmost of bad faith and should be immediately dismissed.**

B.    **The Chapter 11 Case should be dismissed because of the Debtor's malfeasance.**

65.    Bad faith is present when, *inter alia*, "[t]he prepetition conduct of the debtor has been improper." *See In re AdBrite Corp.*, 290 B.R. at 218; *BH S&B Holdings, LLC*, 439 B.R. at 346 ("Cause" exists when "the debtor had engaged in misconduct and whether creditors are in need of a Chapter 7 case to protect their interests.").

66.    As discussed above, pre-petition, the Debtor and its principals have failed to pay full – and timely – rent since 2016, thereby causing the Landlord to incur substantial penalties with its mortgage lender.  The Debtor has also failed to maintain the Premises, causing the Landlord to incur substantial fees and penalties.  Additionally, the condition of the Premises has become uninsurable.

67.    Post-petition, the Debtor has continued to engage in malfeasance by ginning up a purported stay violation – when none existed – so that the Debtor could seek sanctions against the Landlord.  The Debtor has continued to damage the building by breaking into the Premises.  The Debtor's grotesque conduct should not be condoned.  The case should be dismissed.

## WAIVER OF BANKRUPTCY RULE 4001(a)(3)

68.    The Landlord respectfully requests waiver of Bankruptcy Rule 4001(a)(3)'s 14 day stay of enforcement of an order granting relief from the automatic stay and requests that an Order granting this Motion be effective immediately upon entry thereof.

## RESERVATION OF RIGHTS

69.     The Landlord reserves its rights to supplement this Motion and to make such other

and further arguments as it may deem necessary or appropriate.

## CONCLUSION

WHEREFORE, the Landlord respectfully requests that the Court grant the Motion and

grant such other, further, and different relief as the Court determines to be just and proper.

Dated:          New York, New York
                August 18, 2023

By: */s/ Daniel B. Besikof*
Daniel B. Besikof
Noah Weingarten
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154
Telephone: (212) 407-4000
dbesikof@loeb.com
nweingarten@loeb.com

Yifat V. Schnur
YVLS ESQ. LLC
26 Broadway, 19th Flr.
New York, New York 10004
Telephone: (347) 268-5347
yifat@yvlslaw.com

*Attorneys for Landlord Sharei Torah*

24427295

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| YESHIVA GEDOLA LUBAVITCH INC., | Case No. 23-42923-JMM |
| Debtor. | Hon. Jil Mazer-Marino |

**ORDER GRANTING**
**THE LANDLORD'S MOTION TO (I) CONFIRM THE ABSENCE OF THE**
**AUTOMATIC STAY UNDER 11 U.S.C. § 362(b)(10) AND ORDERING**
**THE DEBTOR'S IMMEDIATE SURRENDER OF THE PREMISES,**
**OR IN THE ALTERNATIVE, FOR ENTRY OF AN ORDER**
**GRANTING RELIEF FROM THE AUTOMATIC STAY UNDER**
<u>**11 U.S.C. §§ 362(d)(1) AND (2) AND (II) DISMISS THE BANKRUPTCY CASE**</u>

Upon consideration of the motion of Sharei Torah (the "<u>Landlord</u>") to *(I) Confirm the Absence of the Automatic Stay Under 11 U.S.C. § 362(b)(10) and Ordering the Debtor's Immediate Surrender of the Premises, or in the Alternative, for Entry of an Order Granting Relief from the Automatic Stay Under 11 U.S.C. §§ 362(d)(1) and (2) and (II) Dismiss the Bankruptcy Case* (the "<u>Motion</u>");[1] and upon the hearing held to consider the Motion if any; and the relief requested in the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion being adequate and appropriate under the circumstances; and upon consideration of the record and all proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ADJUDGED, ORDERED AND DECREED:

1.     The Motion is GRANTED as set forth herein.

---

[1] All capitalized terms used, but not defined herein shall have the meaning ascribed to them in the Motion

2.      Pursuant to 11 U.S.C. § 362(b)(10), the automatic stay does not apply with respect to the Expired Lease and the Premises and the Landlord may pursue any and all of its remedies to obtain possession of the Premises, including using or disposing any personal property remaining at the Premises following the Debtor vacating the Premises.

3.      In the alternative, pursuant to 11 U.S.C. §§ 362(d)(1) and (2), the automatic stay is modified, annulled, and revoked to permit the Landlord to take any action to repossess the Property, evict the Debtor, and pursue contempt of court sanctions in the Civil Court for violations of the Civil Court's orders and judgments that were entered in the Holdover Action.

4.      Pursuant to 11 U.S.C. § 1112, the Chapter 11 Case is hereby dismissed with prejudice and with a bar to refiling for one year.  The Clerk of Court is directed to close this Chapter 11 case.

5.      Notwithstanding any other Bankruptcy Rule, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

6.      This Court may retain jurisdiction to interpret, implement, and enforce this Order.


**SO ORDERED:**


Dated:          Brooklyn, New York
                _____ _____, 2023


                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE